COTHRAN *ET AL.* v. LONG CANE LUMBER COMPANY

(139 S. E., 850)

1. EXECUTORS AND ADMINISTRATORS—PAYMENT TO EXECUTOR OF GRANTOR'S WILL OF RENEWAL MONEY FOR EXTENDING TIMBER SALE CONTRACT DID NOT BIND DEVISEES.—Payment to executor of grantor's

will of renewal money for extension of timber sale contract theretofore executed, and in accordance with provision therein for such extension, *held* not to bind devisees under grantor's will to an extension of such contract.

2. ESTOPPEL—EXECUTOR OF GRANTOR'S WILL, ACCEPTING CONSIDERATION FOR EXTENSION OF TIMBER SALE CONTRACT IS ESTOPPED FROM THEREAFTER SUING GRANTEE FOR DAMAGES.—Executor of will of grantor in timber sale contract by receiving and accepting consideration for renewal or extension of contract, in accordance with provision therefor, is estopped from thereafter prosecuting as devisee under grantor's will an action for damages alleged to have been sustained by virtue of continued cutting and removal of timber by grantee.

3. LOGS AND LOGGING—PURCHASER UNDER CONTRACT EXTENDING TIME FOR "CUTTING AND REMOVAL" OF TIMBER ALREADY SOLD HELD NOT LIMITED TO REMOVAL OF TIMBER ALREADY CUT.—Where, after execution of timber sale contract selling timber for a stated price, the parties entered into a contract extending the time for cutting and removal of timber already sold, for a period of three years, with a provision authorizing further extension on payment of stated sum per year, the purchaser on payment of such sum after expiration of extension was not limited to removal of manufactured lumber and timber already cut but not removed, but was entitled to cut and remove any remaining standing timber.

4. LOGS AND LOGGING—$50.00 PER YEAR HELD ADEQUATE CONSIDERATION FOR EXTENSION OF TIMBER SALE CONTRACT ORIGINALLY INVOLVING $1,500.00.—Where price of timber stated in timber sale contract was $1,500.00, and 30,000 feet of lumber, $50.00 per year *held* adequate consideration for agreement extending time for cutting and removal of timber, particularly in view of fact that there was a previous three-year extension of the same nature on payment of sum of $200.00.

Before MAULDIN, J., Edgefield, October, 1925. Affirmed in part and reversed in part, and remanded for new trial.

Action by James S. Cothran and others against the Long Cane Lumber Company. Judgment for defendant, and plaintiffs appeal.

*Messrs. S. McG. Simkins, J. H. Cantelou, S. M. Smith,* and *E. H. Folk,* for appellants, cite: *Where decedent had given an option for the purchase of standing timber which had not been exercised prior to his death, the optionee should*

*have notified devisee of acceptance of the option and made*
*tender to him instead of to executor:* 93 S. E., 436; 88 S.
E., 327; Id., 329; 115 S. C., 107; 108 S. C., 323. *Object and*
*intent of executor in accepting renewal money question for*
*jury:* 126 S. C., 346; 122 S. C., 314. *Power of execu-*
*tors to renew contract:* 18 Cyc., 248; 3 McC., 486; 1 Rich.
Eq., 1.

Messrs. *J. William Thurmond, W. K. Charles,* and *T. B.*
*Greneker,* for respondents, cite: *Was payment of renewal*
*money to executor in case at bar a compliance with the con-*
*tract which contained the option to renew:* 115 S. C., 102;
11 R. C. L., 124; 95 A. S. R., 427; 57 L. R. A., 643. *Tim-*
*ber contracts:* 90 S. C., 176; 128 S. C., 7; 89 S. C., 328;
121 S. C., 225; 23 C. J., 1143; 3 Strob., 39. *A lease is*
*personal property and should go to executor or administra-*
*tor:* 129 S. C., 553; 11 R. C. L., 108; 24 A. S. R., 294.
*Acceptance of an option within the time limit, and compli-*
*ance with its conditions vests optionee with right to bring*
*action of specific performance:* 96 S. C., 155. *Cannot ac-*
*cept benefit of a transaction, and at the same time repudiate*
*it:* 97 S. C., 34; 55 S. C., 508. *"Cut and remove" are anal-*
*ogous terms and are used to express the same meaning in*
*timber contracts:* 100 S. E., 330; 93 S. E., 744; 96 S. E.,
741; 86 S. E., 169.

October 21, 1927.

The opinion of the Court was delivered by MR. JUSTICE
STABLER.

This action was brought by the plaintiffs against the de-
fendant for damages for entering upon the plaintiffs' lands
and cutting, sawing, and removing timber thereon and there-
from, and committing waste in the sum of $5,500.00 actual
and punitive damages. On July 17, 1917, Mrs. Cornelia B.
Cothran, the then owner of the lands out of which this
controversy arose, sold to Osborne Lumber Company, a

partnership, the pine timber on the lands, and under the contract of sale the company was to have until July 17, 1920, to cut and manufacture the timber into lumber, and was to have the right "within one year thereafter at any time to remove all lumber cut and manufactured from said lands." The contract bound both parties and their heirs,. executors, and administrators. On September 26, 1918, Mrs. Cothran and the company entered into another con-· tract by which Mrs. Cothran, in consideration of the payment of the further sum of $200.00, granted to the company an extension of three years for the cutting and removal of the timber already sold, and the right to further extensions. upon payment of $50.00 per year. As these provisions enter materially into the decision of this case, the two paragraphs of the contract containing them are set out in full:

"First. For and in consideration of the purchase price of certain timber rights already purchased and paid for by the said C. C. Osborne Lumber Company and in the further consideration of the sum of two hundred dollars in hand paid by the said C. C. Osborne Lumber Company to Mrs. C. B. Cothran, the time for the cutting and removal of the said timber already sold to the said C. C. Osborne Lumber Company is hereby extended for a period of three years from the expiration of each contract.

"Second. The party of the first part hereby agrees to, and does, confirm the contract of sale as made and entered into on the —— day of December, 1916, covering one tract of land, and also another contract entered into on the 17th day of July, 1917, and with the distinct understanding and privilege to the said C. C. Osborne Lumber Company to have an extension of time for the cutting and removing the said timber for a period of three years from expiration of each contract. In event conditions arise preventing C. C. Osborne Lumber Company from removing the timber in specified time, party of the first part agrees that, upon

payment of $50.00 per year for each contract, she will give further extension on contract."

On July 31, 1920, Mrs. Cothran died, leaving her will, whereby she devised the lands to her children James S. Cothran and Margaret C. Holstein, the plaintiffs in this action.

On the ...... day of...., the lumber company issued its check for $50, payable to the order of "Mrs. C. B. Cothran estate." This check was indorsed as follows: "Mrs. C. B. Cothran Estate, by J. S. Cothran, executor. For dep. to J. S. Cothran, Jr." It was paid at the drawee bank on the 16th day of June, 1923. On February 3, 1924, the Osborne Lumber Company issued its check for $50 payable to the order of "Mrs. C. B. Cothran estate." In the lower left-hand corner of the check was the following: "For extension one year contract Mrs. C. B. Cothran."

The check bears the following indorsement: "Mrs. C. B. Cothran Estate, by J. S. Cothran, Jr., executor," and was paid by the drawee bank on the 14th day of April, 1924. James S. Cothran personally used the proceeds of these two checks. Mrs. Holstein never consented to any renewal or extension of the contract, nor was she served with any notice that an extension was desired, and she was never tendered and never received any money for any renewal or extension.

James S. Cothran claims that the payment evidenced by the check of February 3, 1924, was made to him as executor, not to allow further cutting of the timber on the land, but only to allow removal of the timber already cut.

Subsequently to the making of the second $50 payment the timber passed through several intermediate holders into the hands of the defendant.

After the close of the testimony, the defendant moved for a directed verdict, upon the ground "that the uncontradicted testimony shows that the renewal money and also

the two renewal contracts, the first beginning July 18, 1923, and the second beginning July 18, 1924, were paid to the executor of the estate of Mrs. Cornelia B. Cothran."

The motion was granted, and a verdict returned in favor of the defendant.

The plaintiffs appealed to this Court on seven exceptions, but in the argument before the Court they state the questions involved in the appeal to be:

"(1) Did the Court err in directing a verdict for the defendant-respondent, and in holding that the $50 paid to James S. Cothran, as executor of the will of Mrs. Cornelia B. Cothran, deceased, for extension of timber sale contract, was binding on plaintiffs-appellants, who were the devisees under said will and the owners of the fee in said lands and the timber thereon, when the $50 were paid?

"(2) Did the Court err in not submitting to the jury the question as to the intents and purpose for which James S. Cothran, as executor of said will, received said $50, that is, whether or not he received it for an extension of the contract to cut and remove timber or simply to allow the removal of the timber already cut?

"(3) Did the Court err in not construing the contract and in holding that the payment of the $50.00 was for an extension of the contract, not only to cut, but to remove also?"

The respondent joined issue on these questions, and an answer to them will decide all the questions involved in the appeal.

As to the first question: We are of the opinion that payment to the executor of Mrs. Cothran's will of the renewal money for extension of the timber sale contract does not bind the devisees under Mrs. Cothran's will to an extension of the contract. In *Fairfield Timber Co. v. Simmons,* 108 S. C., 321; 94 S. E., 491, this Court

quotes with approval the following from *Carolina Timber
Co. v. Wells,* 171 N. C., 262; 88 S. E., 327:

"Where in one of these timber deeds the time first pro-
vided and paid for has passed, and it becomes necessary for
the grantee to hold by reason of the performance of the
stipulation for an extension, that the estate or interest arises
at the time the conditions are complied with, and, in the
absence of any provision in his deed to the contrary, the
price paid belongs to him who then has the title, and from
whose ownership the interest is then created. The option
or privilege obtained, to the extent of the right conferred,
is a contract attendant upon the title, and, as stated, unless
otherwise specified in the deed conveying the title, the price
for the interest arising on proper performance of the con-
ditions will inure to the owner. It is from his estate that
the interest passes, and he must receive the purchase price."

In that case the deed did not specify to whom the money
arising from the renewal of the timber contract should be
paid.

It is true that the Court also referred, in that case, to
the fact that the timber deed contained a provision that all
benefits and advantages therein provided for either of the
parties "shall accrue to their respective heirs, executors, ad-
ministrators or assigns, as the case may be," but it is clear
that the decision would have been the same even if the
deed had not contained this provision, since the Court com-
mented on this provision as "still another reason" why the
owner of the land at the time the privilege was to be exer-
cised should receive the consideration therefor.

In *Richardson v. Cooler,* 115 S. C., 102; 104 S. E., 305,
it was held that the consideration for the renewal should be
paid to the one who owned the land at the time the timber
deed was made, but this decision was based on the fact that
the deed specifically provided that the consideration for the
additional time should be paid to the then owner of the

land.   This case is entirely within the purview of the deci-
sion in the *Simmons case,* and is supported by that case.
In the *Richardson case* the Court said:

"But here the deeds do contain provisions to the contrary,
for they expressly provide that the renewal money shall
be paid to the respective grantors, and not to them or their
assigns; hence, in the absence of any assignment by the
grantors of their right to the renewal money, their gran-
tees took title to their respective tracts subject to the right
of their grantors, expressly reserved, to that money, as well
as subject to the right of the company and its assigns (Rich-
ardson) to the timber, on payment of the renewal money to
their grantors, according to the terms of their deeds to the
company."

However, James S. Cothran, by receiving and ac-
cepting the consideration for the renewal or exten-
sion of the contract, is now estopped from prose-
cuting this action for damages which he alleges he has sus-
tained by virtue of the continued cutting and removal of
the timber by the defendant.   As no money for renewal
of the contract was tendered to Mrs. Holstein, and as the
renewal money was not paid by her consent, she is entitled
to have her action for damages tried before a jury.

As to the second and third questions:  There is no testi-
mony tending to show that James S. Cothran accepted the
first check for $50.00 for any purpose other than that of
extending the contract.   As to the second $50.00 check, he
states that, after reading the contract, his idea in taking the
$50.00 was simply to allow them to remove the timber al-
ready cut, and not to extend the time for cutting the timber.
It is nowhere stated, however, either by Mr. Cothran or by
any one else, that this payment was accepted for any other
purpose than for an extension provided for by the contract
of September 26, 1918.   In fact, Mr. Cothran's testimony
makes it clear that this payment was made and accepted in

accordance with that contract. The point at issue, therefore, is, What is the meaning of the contract as to the extension thereof? The contract was in writing, was before the Court, and was for the Court to construe.

The contracts dealing with the sale of the timber must be construed together and as a whole. The contract of July 17, 1917, is clearly a contract of sale. It is stated in so many words that the seller "does hereby sell unto the said buyer all of the pine timber," etc. The price of the timber stated in that contract was $1,500.00 and 30,000 feet of lumber. The contract of September 26, 1918, refers to "said timber rights already purchased and paid for," and then goes on to say that in the further consideration of the sum of $200.00 the time for the "cutting and removal of the said timber already sold" was extended for a period of three years. In the second paragraph of this agreement this sentence occurs:

"In event conditions arise preventing C. C. Osborne Lumber Company from removing the timber in specified time the party of the first part agrees that upon payment of $50.00 per year for each contract, she will give further extension on the contract."

It is contended by the plaintiffs, that, inasmuch as the word "removing" stands alone in this sentence, while in two preceding sentences the "cutting and removing" are spoken of together, this last sentence provides for an extension of time only for the removal of timber that might be already cut at the expiration of the first three years' extension, and not for a further extension of time for cutting timber. We cannot agree with this contention. The two contracts, being read together, show that both the purchaser and the seller considered that the timber was fully paid for under the first contract; the second contract, indeed, refers to this timber as "already purchased and paid for" and "already sold." The additional consideration of

$200.00 was, therefore, to allow the purchaser a three-year extension of time for harvesting the timber which it had already bought and paid for. And we cannot conclude that the additional extensions to which the purchaser became entitled upon payment of $50.00 per year were limited to the removal of manufactured lumber and timber cut and lying on the ground, but not removed at the end of the three-year extension, but must conclude that these extensions included also the cutting and removing of any remaining standing timber. If it had been the intention of the parties to provide for extensions different in kind from the three-year extension, it would have been very easy for them to insert a few appropriate words indicating the kind of extensions they had in mind.

It is contended that $50.00 per year is not an adequate consideration for the timber standing on the land, but it must be remembered that Mrs. Cothran herself, during her lifetime, granted an extension for three years upon the payment of $200.00. In view of this fact, we cannot say that $50.00 per year would be an insufficient consideration for an additional extension of the same nature. The fact that the consideration is so nearly the same as that for which Mrs. Cothran granted a three-year extension for cutting and removing the timber strengthens the view. that the parties intended the same sort of extension upon the payment of the additional $50.00 per year, as was granted by Mrs. Cothran for $66.66 per year.

The judgment of this Court is that the judgment of the Circuit Court be affirmed as to the plaintiff, James S. Cothran; but as to the plaintiff, Margaret C. Holstein, the judgment is reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE BLEASE and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. JUSTICE COTHRAN disqualified.